**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br>        *Plaintiff,* <br><br> TEXAS LEAGUE OF YOUNG VOTERS EDUCATION FUND; and IMANI CLARK, <br><br>        *Proposed Plaintiff-Intervenors,* <br><br>        v. <br><br> STATE OF TEXAS; JOHN STEEN, in his official capacity as Texas Secretary of State; and STEVE McCRAW, in his official capacity as Director of the Texas Department of Public Safety, <br><br>        *Defendants.* | Civ. No. 2:13-cv-00263 |

**MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO INTERVENE OF PROPOSED PLAINTIFF-INTERVENORS
THE TEXAS LEAGUE OF YOUNG VOTERS EDUCATION FUND
<u>AND IMANI CLARK</u>**

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ........................................................................................ 1

FACTUAL BACKGROUND AND SUMMARY OF ARGUMENT ............................................. 2

ARGUMENT ............................................................................................................. 7

I.   PROPOSED PLAINTIFF-INTERVENORS SHOULD BE PERMITTED TO
     INTERVENE AS OF RIGHT PURSUANT TO FED. R. CIV. P. 24(a) ......................... 7

     A.  The Requirements of Fed. R. Civ. P. 24(a) Should Be Liberally Construed................ 7

     B.  Courts Routinely Grant Fed. R. Civ. P. 24 Intervention to Affected Voters in Cases
         Brought Under the Voting Rights Act ...................................................................... 8

     C.  Proposed Plaintiff-Intervenors Satisfy the Requirements to Intervene as of Right
         Pursuant to Fed. R. Civ. P. 24(a)(2)........................................................................ 9

         1.  Proposed Plaintiff-Intervenors' Motion is Timely......................................... 10

         2.  Proposed Plaintiff-Intervenors Have Direct, Substantial, and Legally
             Protectable Interests. ..................................................................................... 11

         3.  Proposed Plaintiff-Intervenors' Interests Will Be Directly and Substantially
             Affected by the Disposition of this Litigation ................................................. 12

         4.  Proposed Plaintiff-Intervenors' Interests Cannot Be Adequately Represented
             by the Existing Parties. .................................................................................. 13

         5.  Proposed Plaintiff-Intervenors Do Not Need to Satisfy the Requirements of
             Article III Standing. ...................................................................................... 17

II.  IN THE ALTERNATIVE, THIS COURT SHOULD GRANT PERMISSIVE
     INTERVENTION. ....................................................................................................... 19

CONCLUSION............................................................................................................... 20

# TABLE OF AUTHORITIES

## <u>Cases</u>

*Babbit v. United Farm Workers National Union*,
442 U.S. 289 (1979).........................................................................................................18

*Bartlett v. Strickland*,
556 U.S. 1 (2009).............................................................................................................11

*Bituminous Casualty Corp. v. Garcia*,
223 F.R.D. 308 (N.D. Tex. 2004)....................................................................................17

*Blanding v. DuBose*,
454 U.S. 393 (1982).........................................................................................................16

*Chiles v. Thornburgh*,
865 F.2d 1197 (11th Cir. 1989) .......................................................................................11

*City of Lockhart v. United States*,
460 U.S. 125 (1983).........................................................................................................16

*Commack Self-Service Kosher Meats, Inc. v. Rubin*,
170 F.R.D. 93 (E.D.N.Y. 1996).......................................................................................16

*County Council of Sumter County v. United States*,
555 F. Supp. 694 (D.D.C. 1983)......................................................................................16

*County of San Miguel, Colorado v. MacDonald*,
244 F. R.D. 36 (D.D.C. 2007)..........................................................................................14

*Diaz v. Southern Drilling Corp.*,
427 F.2d 1118 (5th Cir. 1970) ...........................................................................................7

*Doe v. Glickman*,
256 F.3d 371 (5th Cir. 2001) .................................................................................8, 9, 13

*Edwards v. City of Houston*,
78 F.3d 983 (5th Cir. 1996) .............................................................................................13

*Fiandaca v. Cunningham*,
827 F.2d 825 (1st Cir. 1987).............................................................................................16

*Fund for Animals, Inc. v. Norton*,
322 F.3d 728 (D.C. Cir. 2003)..........................................................................................14

*Gates v. Cook*,
    234 F.3d 221 (5th Cir. 2000) ............................................................................... 13

*Grutter v. Bollinger*,
    539 U.S. 306 (2003)............................................................................................... 15

*Hopwood v. Texas*,
    21 F.3d 603 (5th Cir. 1994) ................................................................................. 13

*In re Enron Corporate Securities Derivative, & ERISA Litigation*,
    229 F.R.D. 126 (S.D. Tex. 2005)........................................................................ 19

*League of United Latin America Citizens, District 19 v. City of Boerne*,
    659 F.3d 421 (5th Cir. 2011) ............................................................................... 18

*League of United Latin American Citizens, Council No. 4434 v. Clements*,
    999 F.2d 831 (5th Cir. 1993) ............................................................................... 18

*McDonald v. E.J. Lavino Co.*,
    430 F.2d 1065 (5th Cir. 1970) ............................................................................... 7

*Natural Resources Defense Council v. Costle*,
    561 F.2d 904 (D.C. Cir. 1977) ............................................................................. 14

*Newby v. Enron Corp.*,
    443 F.3d 416 (5th Cir. 2006) ........................................................................ 17, 19

*Northwest Austin Municipal Utility District No. One v. Holder*,
    557 U.S. 193 (2009)........................................................................................ 16, 17

*Nuesse v. Camp*,
    385 F.2d 694 (D.C. Cir. 1967) ............................................................................. 14

*Reid v. General Motors Corp.*,
    240 F.R.D. 257 (E.D. Tex. 2006)........................................................................ 19

*Rivera v. City of San Antonio*,
    No. SA-06-CA-235-XR, 2006 WL 3691015 (W.D. Tex. Dec. 12, 2006)............................ 19

*Ross v. Marshall*,
    426 F.3d 745 (5th Cir. 2005) ............................................................................... 11

*Ruiz v. Estelle*,
    161 F.3d 814 (5th Cir. 1998) ..................................................................... 9, 17, 18

iii

*Sandusky County Democratic Party v. Blackwell,*
    387 F.3d 565 (6th Cir. 2004) ............................................................. 16

*Shelby County, Alabama v. Holder,*
    133 S. Ct. 2612 (2013) ............................................................. 2, 3, 11, 17

*Sierra Club v. Espy,*
    18 F.3d 1202 (5th Cir.1994) ............................................................. 7, 10

*South Carolina v. United States,*
    898 F. Supp. 2d 30 (D.D.C. 2012) ............................................................. 3, 17

*South Utah Wilderness v. Norton,*
    No. 01-2518, 2002 WL 32617198 (D.D.C. June 28, 2002)................................ 11

*Symm v. United States,*
    439 U.S. 1105 (1979) *aff'd*, 439 U.S. 1105 (1979) ............................................ 4

*Texas v. Holder,*
    888 F. Supp. 2d 113 (D.D.C. 2012) ............................................................. 1, 2, 17

*Texas v. United States,*
    887 F. Supp. 2d 133 (D.D.C. 2012) ............................................................. 11

*Trans World Airlines, Inc. v. Mattox,*
    712 F. Supp. 99 (W.D. Tex. 1989)............................................................. 8

*Trans Chemical Ltd. v. China National Machine Import & Export Corp.,*
    332 F.3d 815 (5th Cir. 2003) ............................................................. 10

*Trbovich v. United Mine Workers of America,*
    404 U.S. 528 (1972)............................................................. 13, 14

*Turn Key Gaming, Inc. v. Oglala Sioux Tribe,*
    164 F.3d 1080 (8th Cir. 1999) ............................................................. 7

*United States v. Perry County Board of Education,*
    567 F.2d 277 (5th Cir. 1978) ............................................................. 7

*United States v. Texas Education Agency (Lubbock Independent School District),*
    138 F.R.D. 503 (N.D. Tex. 1991) ............................................................. 13

*Washington Mutual, Inc. v. Federal Deposit Insurance Corporation,*
    659 F. Supp. 2d 152 (D.D.C. 2009) ............................................................. 14

iv

## Docketed Cases

*Florida v. Holder*,
 No. 1:11-cv-01428 (D.D.C.) ............................................................. 15, 17

*Georgia v. Holder*,
 No. 1:10-cv-01062 (D.D.C.) ................................................................. 15

*Harris County Department of Education v. Harris County, Texas*,
 No. 4:12-cv-02190 (S.D. Tex.) ............................................................... 9

*LaRoque v. Holder*,
 No.11-5349 (D.C. Cir.) ...................................................................... 15

*Northwest Austin Municipal Utility District No. One v. Holder*,
 No. 08-322 (U.S.) ............................................................................ 16

*Perez v. Perry*,
 No. 5:11-cv-00360 (W.D. Tex.) ........................................................... 8, 10

*Session v. Perry*,
 No. 2:03-cv-00354 (E.D. Tex.) ............................................................... 9

*South Carolina v. United States*,
 No. 1:12-cv-00203 (D.D.C.) ................................................................. 9

*Texas v. Holder*,
 No. 1:11-cv-01303 (D.D.C.) ................................................................. 8

*Texas v. Holder*,
 No. 1:12-cv-00128 (D.D.C.) ................................................................. 2

*United States v. N.Y. City Board of Education*,
 No. 1:96-cv-00374 (E.D.N.Y.) ............................................................. 15

*United States v. Waller County, Texas*,
 No. 4:08-cv-03022 (S.D. Tex.) ............................................................... 5

## Statutes

U.S. Const., amend. XIV ........................................................................ 1

U.S. Const, amend. XV ......................................................................... 1

42 U.S.C. § 1973c ............................................................................... 1

v

**Rules**

Fed. R. Civ. P. 24(a) .................................................................................................. 7

Fed. R. Civ. P. 24(a)(2) ........................................................................................... 9, 13

Fed. R. Civ. P. 24(b)(2) ............................................................................................ 19

S.B. No. 14 § 14 (codified at Tex. Elec. Code § 63.0101) ...................................... 3, 4

**Other Authorities**

U.S. Department of Justice, Civil Rights Division, Voting Section, *Section 5 Covered Jurisdictions*, http://www.justice.gov/crt/about/vot/sec_5/covered.php ................................... 2

Press Release, Attorney General of Texas, Statement by Texas Attorney General Greg Abbott (June 25, 2013), https://www.oag.state.tx.us/oagnews/release.php?id=4435 ............. 3

7C Charles Alan Wright, Arthur Miller and Mary Kay Kane, Federal Practice and Procedure § 1908.1 (2d ed. 1986) .................................................................... 12, 13

Letter from Thomas E. Perez, Asst. Att'y Gen., U.S. Dep't of Justice, to Keith Ingram, Director of Elections, State of Texas (Mar. 12, 2012) ...................................... 2, 14

Terry Kliewer, *Waller County DA apologizes in vote flap*, Houston Chronicle, (Feb. 25, 2004), *available at* http://www.chron.com/news/houston-texas/article/Waller-County-DA-apologizes-in-vote-flap-1957246.php ............................................................... 4

Proposed Plaintiff-Intervenors, the Texas League of Young Voters Education Fund and Imani Clark (together, "Proposed Plaintiff-Intervenors"), by and through their undersigned counsel, respectfully submit this Memorandum of Law in support of their Motion to Intervene as of right pursuant to Rule 24(a)(2) of the Federal Rules of Civil Procedure or, alternatively, for permissive intervention pursuant to Federal Rules of Civil Procedure 24(b)(1).

## PRELIMINARY STATEMENT

On August 22, 2013, Plaintiff the United States ("Plaintiff") filed the instant action, challenging Texas's voter photo identification measure, Senate Bill No. 14 ("voter ID law," "photo ID law," or "SB 14"), pursuant to Section 2 of the Voting Rights Act of 1965 ("Voting Rights Act," or "VRA"), 42 U.S.C. §1973c ("Section 2"), to enforce the rights guaranteed by the Fourteenth and Fifteenth Amendments to the United States Constitution. U.S. Const. amend. XIV & XV. Pls.' Compl., Doc. 1-1, at ¶ 1. Proposed Plaintiff-Intervenors, Imani Clark, a registered African-American voter in Texas, and the Texas League of Young Voters Education Fund (the "Texas League," or "Texas League of Young Voters"), an organization whose mission is to empower young voters of color, seek to intervene because SB 14 is "the most stringent [photo ID law] in the country," as it "imposes strict, unforgiving burdens on the poor, and racial minorities in Texas," including upon Proposed Plaintiff-Intervenors themselves. *Texas v. Holder*, 888 F. Supp. 2d. 113, 144 (D.D.C. 2012).

Defendants are the State of Texas (the "State" or "Texas"), John Steen, in his official capacity as Texas Secretary of State, and Steve McCraw, in his official capacity as Director of Texas's Department of Public Safety ("DPS"). Defendants have not yet answered Plaintiff's Complaint.

## FACTUAL BACKGROUND AND SUMMARY OF ARGUMENT

Prior to the U.S. Supreme Court's decision in *Shelby County, Alabama v. Holder*, 133 S. Ct. 2612 (2013), discussed more in depth below, Texas, because of its long history of intense racial discrimination against people of color, was one of nine states covered in its entirety by Section 5 of the VRA. U.S. Dep't of Justice, Civil Rights Division, Voting Section, *Section 5 Covered Jurisdictions*, (Aug. 26, 2013) http://www.justice.gov/crt/about/vot/sec_5/covered.php. Accordingly, Texas was required to submit all of its voting changes for administrative preclearance by the Department of Justice ("DOJ"), or for judicial preclearance by a three-judge panel in the United States District Court for the District of Columbia (the "D.C. Court"), before such changes could take effect.

In 2011, Texas unsuccessfully sought both administrative and judicial preclearance for SB 14. *Texas*, 888 F. Supp. 2d at 114, 117. DOJ rejected Texas's request for administrative preclearance after determining that Texas did not meet its burden of showing that SB 14 would not be harmful to voters of color. *Id.* at 117-18; Letter from Thomas E. Perez, Asst. Att'y Gen., U.S. Dep't of Justice, to Keith Ingram, Director of Elections, State of Texas (Mar. 12, 2012), attached as Exhibit 1 to Pl.'s Comp., Doc 1-1. After failing to receive administrative preclearance, Texas sought judicial preclearance from the D.C. Court.[1] *Texas*, 888 F. Supp. 2d at 118-19; Expedited Compl. for Declaratory J., *Texas v. Holder*, No. 1:12-cv-00128, Doc. 1 at 22 (D.D.C. Jan. 24, 2012). After a bench trial, the three-judge panel of the D.C. Court denied preclearance, concluding that SB 14 "will almost certainly have retrogressive effect." *Texas*, 888 F. Supp. 2d at 115, 144.

---

[1]     Proposed Plaintiff-Intervenors Ms. Clark and the Texas League successfully intervened in that case. *See* Minute Order, *Texas v. Holder*, No. 1:12-cv-00128 (D.D.C. Mar. 22, 2012) (three-judge panel granting motion to intervene as Defendants).

In June 2013, the U.S. Supreme Court declared Section 4(b) of the Voting Rights Act unconstitutional. *Shelby Cnty., Ala.,* 133 S. Ct. at 2631. Mere hours later, Texas declared that the previously-blocked discriminatory photo ID law would be implemented effective "immediately." Press Release, Att'y Gen. of Tex., Statement by Tex. Att'y Gen. Greg Abbott (June 25, 2013), https://www.oag.state.tx.us/oagnews/release.php?id=4435.

Notwithstanding the D.C. Court's holding that SB 14 would prevent "a substantial subgroup of Texas voters, many of whom are African[-]American or Hispanic," from voting in person, *Texas*, 888 F. Supp. at 138, Texas, since failing to obtain administrative or judicial preclearance, has made no effort to ameliorate or otherwise alter its discriminatory law before implementing it. *See South Carolina v. United States*, 898 F. Supp. 2d 30, 35-40 (D.D.C. 2012) (South Carolina's concessions during photo ID trial that broadened interpretation of "reasonable impediment" provision to allow voters who lack required photo ID to vote without one, under certain conditions, alleviated burdens on voters).

Under SB 14, registered voters, such as Proposed Individual Plaintiff-Intervenor Imani Clark, must produce one of seven state-issued photo IDs ("accepted photo IDs" or "required photo IDs") to vote in person under SB 14. The required photo ID must be one of the following: (1) DPS-issued driver's license (unexpired or expired within 60 days of election); (2) DPS-issued non-driver's license ID (unexpired or expired within 60 days of election); (3) DPS-issued license to carry a weapon (unexpired or expired within 60 days of election); (4) U.S. passport (unexpired or expired within 60 days of election); (5) U.S. military photo ID card (unexpired or expired within 60 days of election); (6) U.S. citizenship certificate with photo; and (7) a DPS-issued Election Identification Certificate ("EIC") (unexpired). SB 14, § 14 (codified at Tex. Elec. Code § 63.0101).

SB 14 imposes severe and undue limitations on the acceptable photo IDs to vote in person. SB 14 purposefully excludes, for example, student ID cards, even those issued by Texas's public universities, and voter registration cards, including those that are issued by the State.  The unnecessarily strict photo ID law, however, inexplicably allows handgun licenses. *Id.*

Moreover, although SB 14 affords voters the option of securing an EIC, a DPS-issued photo ID created by SB 14 to satisfy the photo ID requirement, the costs associated with obtaining the underlying documents necessary to secure an EIC are prohibitive for many voters of color, including many members and constituents of the Texas League. For example, a copy of a certified birth certificate from the Texas Bureau of Vital Statistics—the least expensive option for voters born in Texas—is $22. The cost to obtain a copy of U.S. citizenship or naturalization papers is $345. *See* Pls. Compl., Doc. 1, at ¶¶ 16-25, Doc. 1 (describing the requirements of SB 14).

Proposed Individual Plaintiff-Intervenor Ms. Clark is an African-American registered voter in Texas.  Ms. Clark is an undergraduate student attending Prairie View A&M University ("Prairie View"), a public historically Black university in Waller County. Prairie View's struggle to secure full voting rights for its students is well-documented. *See, e.g., Symm v. United States*, 445 F. Supp. 1245, 1261 (S.D. Tex. 1978), *aff'd*, 439 U.S. 1105 (1979) (holding as unconstitutional Waller County's practice of denying the opportunity to register to vote to Prairie View students whose families were not "native" to the County). Indeed, as recently as 2004, for example, the Waller County District Attorney threatened to arrest student voters based upon the baseless allegation that students could not legally vote using their university addresses. Terry Kliewer, *Waller County DA apologizes in vote flap*, Hous. Chron., Feb. 25, 2004, at A1*, available at* http://www.chron.com/news/houston-texas/article/Waller-County-DA-apologizes-

in-vote-flap-1957246.php. Moreover, in 2008, the County resolved a lawsuit brought by DOJ concerning its voter registration practices, acknowledging in a consent decree that the County rejected voter registration applications in violation of federal voting rights laws and that its illegal actions primarily had an impact on Prairie View students. *United States v. Waller Cnty, Texas*, No. 4:08-cv-03022, Doc. 8 (S.D. Tex. Oct. 17, 2008) (order approving Consent Decree); *see also id.* at Doc. 1. (complaint alleging violation of federal voting rights laws).  Here, because Ms. Clark, who voted in previous elections using her Prairie View A&M student ID, but does not have any required photo IDs under SB 14 and does not own a car or have a driver's license, her voting rights are imperiled.

Proposed Organizational Plaintiff-Intervenor the Texas League is a non-partisan, non-profit organization that was founded in 2010. The Texas League seeks to foster civic engagement among young people, and particularly young people of color, through the voting process; to educate young people about voting and the political process; and to equip young people with the tools necessary to organize their communities around important civic issues. The Texas League does this work through voter registration, grassroots organizing, social media outreach, and targeted in-person voter contact and turnout programs, much of which focuses specifically on issues relevant to young people of color. In Texas, the core constituencies of the Texas League are college-aged people of color, including but not limited to, students in Harris, Waller, Fort Bend, Travis, Leon, Dallas, and Bexar counties. The Texas League has registered numerous young voters of color in Texas through voter registration and education activities on university campuses and in African-American neighborhoods. Since its founding, the Texas League has registered thousands of young voters throughout Texas.

In addition to making voting more burdensome for the voters for whom the Texas League endeavors to make voting more accessible, Texas's implementation of SB 14 also will severely burden the organization's already-limited human and financial resources. For example, because the November 2013 Texas elections are rapidly approaching, Texas's implementation of SB 14 will require the Texas League to redirect its limited resources from registering new voters to (a) assessing whom, among its members and constituency, lacks one of the forms of required photo IDs under SB 14 and/or determining which such IDs (or underlying documents required to obtain them) each member/constituent needs; (b) hosting public education campaigns designed to inform young voters of color that Defendants' previously court-rejected photo ID law is now in effect; and, (c) providing financial assistance and transportation to young voters that lack the required photo IDs and/or underlying documents, so that they can acquire them. In short, the implementation of SB 14 will require the Texas League to redirect its efforts and limited budget away from its organizational mission of training young members about how to register and otherwise empower young voters of color, towards ensuring that these same voters are able to cross the threshold of polling stations' doors.

Proposed Plaintiff-Intervenors therefore respectfully seek intervention in this matter because they have direct, substantial, and legally-protectable interests in this litigation that cannot be adequately represented by the existing parties to this case. *See*, Complaint in Intervention, filed with this Motion. For the reasons discussed below, Proposed Plaintiff-Intervenors meet all requirements for intervention as of right under Fed. R. Civ. P. 24(a)(2), and this Court should grant their Motion to Intervene. In the alternative, the facts and circumstances of the case warrant the Court's granting of permissive intervention pursuant to Fed. R. Civ. P. 24(b)(1) to Proposed Plaintiff-Intervenors.

6

**ARGUMENT**

## I. PROPOSED PLAINTIFF-INTERVENORS SHOULD BE PERMITTED TO INTERVENE AS OF RIGHT PURSUANT TO FED. R. CIV. P.  24(a)

### A.  The Requirements of Fed. R. Civ. P. 24(a) Should Be Liberally Construed.

Federal Rule of Civil Procedure 24(a) establishes the requirements for intervention as a matter of right:

> (a) Intervention of Right. On timely motion, the court must permit anyone to intervene who: (1) is given an unconditional right to intervene by a federal statute; or (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a).

Federal courts have emphasized that Fed. R. Civ. P. 24's intervention requirements should be construed flexibly and in favor of intervention. *United States v. Perry Cnty. Bd. of Educ.*, 567 F.2d 277, 279 (5th Cir. 1978) ("Our inquiry is a flexible one, which focuses on the particular facts and circumstances surrounding each application . . . .") (internal citation and quotation marks omitted); *McDonald v. E.J. Lavino Co.*, 430 F.2d 1065, 1074 (5th Cir. 1970) ("[Fed. R. Civ. P. 24(a)] has its permissive aspects, and . . . we must view its exercise in the liberal atmosphere of the Rules of Civil Procedure . . . ."); *Diaz v. S. Drilling Corp.*, 427 F.2d 1118, 1126 (5th Cir. 1970) ("[T]he possibility of prejudice [in an untimely filing] is to be evaluated against the liberal treatment that is to be accorded applications for intervention of right . . . ."); *see also Turn Key Gaming, Inc. v. Oglala Sioux Tribe*, 164 F.3d 1080, 1081 (8th Cir. 1999) ("Rule 24 is to be construed liberally, and doubts resolved in favor of the proposed intervenor."); *Sierra Club v. Espy*, 18 F.3d 1202, 1205 (5th Cir.1994) ("Federal courts should

allow intervention where no one would be hurt and greater justice could be attained."). (internal citation and quotation omitted).

Proposed Plaintiff-Intervenors' Motion to Intervene satisfies Fed. R. Civ. P. 24(a)(2)'s requirements for intervention because: (1) the Motion is timely; (2) Proposed Plaintiff-Intervenors have direct, substantial and legally protectable interests in this action; (3) Proposed Plaintiff-Intervenors' interests will be affected by the outcome of this litigation; and (4) Proposed Plaintiff-Intervenors' interests cannot be adequately protected by the existing parties to the litigation. These factors strongly counsel in favor of this Court granting the Proposed Plaintiff-Intervenors' Motion as of Right pursuant to Fed. R. Civ. P. 24(a)(2). *Trans World Airlines, Inc. v. Mattox*, 712 F. Supp. 99, 104 (W.D. Tex. 1989) (granting intervention where these factors have been satisfied); *Doe No. 1 v. Glickman*, 256 F.3d 371, 381 (5th Cir. 2001) (applying requirements of Fed. R. Civ. P. 24(a) and granting intervention as a matter of right).

**B. Courts Routinely Grant Fed. R. Civ. P. 24 Intervention to Affected Voters in Cases Brought under the Voting Rights Act.**

Federal district courts in Texas routinely grant intervention in Voting Rights Act cases to voters of color and organizations representing their interests, acknowledging that such interests may diverge from the positions of institutional parties, such as the United States, the Plaintiff in this action, or the Attorney General. Indeed, intervention has been permitted in a broad range of recent voting rights cases. *See, e.g.*, Order, *Perez v. Perry*, No. 5:11-cv-360, Doc. 67 (W.D. Tex. July 25, 2011) (granting intervention to voters of color and organizations representing voters of color in redistricting challenge brought under Sections 2 and 5 of the VRA and on constitutional grounds); *see also, e.g.*, Order, *Texas v. Holder*, No. 1:11-cv-01303, Doc. 11 (D.D.C. Aug. 16, 2011) (granting intervention to voters of color and organizations representing voters of color in declaratory judgment action to preclear redistricting plan under Section 5 of the VRA); Mem. &

8

Op., *Harris Cnty. Dep't of Educ. v. Harris Cnty., Tex.*, No. 4:12-cv-02190, Doc. 30 (S.D. Tex. Sept. 6, 2012) (granting several motions to intervene in redistricting challenge brought under Sections 2 and 5 of the VRA and on constitutional grounds); Order, *South Carolina v. United States*, No. 1:12-cv-00203, Doc. 33 (D.D.C. Apr. 4, 2012) (granting intervention to voters and organizations of color in declaratory judgment action to preclear photo ID law under Section 5 of the VRA); *Session v. Perry*, No. 2:03-CV-00354, Doc. 72 (E.D. Tex. Nov. 19, 2003) (granting several motions to intervene to voters of color in mid-decade redistricting challenge brought under Section 2 of the VRA and on constitutional grounds). Here, intervention of Proposed Plaintiff-Intervenors is similarly appropriate.

### C. Proposed Plaintiff-Intervenors Satisfy the Requirements to Intervene as of Right Pursuant to Fed. R. Civ. P. 24(a)(2).

Under Fed. R. Civ. P. 24(a)(2), intervention as of right is appropriately granted where, as here: (1) the motion is timely; (2) the applicant "claims an interest relating to the property or transaction that is the subject of the action;" (3) the applicant "is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest;" and (4) the existing parties do not adequately represent that interest. Fed. R. Civ. P. 24(a)(2). *See Doe*, 256 F.3d at 381. Proposed Plaintiff-Intervenors satisfy each of the above requirements.

In addition, a party seeking to intervene as of right must demonstrate that it has standing under Article III of the Constitution, *only if* the intervening party seeks different relief from those sought by existing parties. *Ruiz v. Estelle*, 161 F.3d 814 (5th Cir. 1998). Here, Proposed Plaintiff-Intervenors seek the same relief as Plaintiff, but are also able to satisfy Article III requirements for standing, if required.

**1.  Proposed Plaintiff-Intervenors' Motion is Timely.**

Proposed Plaintiff-Intervenors' Motion to Intervene, filed less than a week after Plaintiff

filed its Complaint on August 22, 2013, is timely. Timeliness is measured by:

> (1) [t]he length of time during which the would-be intervenor actually knew or reasonably should have known of its interest in the case before it petitioned for leave to intervene; (2) the extent of the prejudice that the existing parties to the litigation may suffer as a result of the would-be intervenor's failure to apply for intervention as soon as it knew or reasonably should have known of its interest in the case; (3) the extent of the prejudice that the would-be intervenor may suffer if intervention is denied; and (4) the existence of unusual circumstances militating either for or against a determination that the application is timely.

*Sierra Club,* 18 F.3d at 1205 (internal citations and quotation marks omitted). "The analysis is

contextual; absolute measures of timeliness should be ignored." *Id*.; *see Trans Chem. Ltd. v.*

*China Nat'l Mach. Imp. & Exp. Corp.,* 332 F.3d 815, 822 (5th Cir. 2003). Proposed Plaintiff-

Intervenors' Motion for Intervention readily satisfies those standards. Moreover, unlike the

procedural posture here, courts in this district have granted intervention to putative plaintiff-

intervenors even after certain pleading deadlines have passed. Order, *Perez v. Perry,* No. 5:11-

cv-00360, Doc. 67.

Proposed Plaintiff-Intervenors submit their Motion to Intervene and accompanying

Complaint in Intervention in advance of: (a) Defendants' filing Answers; (b) any deadline set

forth by the Court; and (c) the commencement of discovery. No existing party would suffer any

prejudice based on the timing of Proposed Plaintiff-Intervenors' intervention request. In contrast,

if Proposed Plaintiff-Intervenors were not permitted to intervene, they would suffer considerable

prejudice from the implementation of SB 14.

For these reasons, Proposed Plaintiff-Intervenors' Motion to Intervene is timely.

## 2.   Proposed Plaintiff-Intervenors Have Direct, Substantial, and Legally Protectable Interests.

Proposed Plaintiff-Intervenors have direct, substantial, and legally protectable interests in this litigation. As an African-American registered voter in Texas, Ms. Clark has a direct interest in ensuring that she is not denied her fundamental right to vote by operation of SB 14. Proposed Organizational Intervenor the Texas League, as an organization dedicated to protecting the voting rights of young voters of color in Texas, has a similar interest in ensuring that Texas's photo ID law is not implemented to the detriment of its members and constituents, among others. As a plurality of the Supreme Court observed: "racial discrimination and racially polarized voting are not ancient history. Much remains to be done to ensure that citizens of all races have equal opportunity to share and participate in our democratic processes and traditions. . . ." *Bartlett v. Strickland*, 556 U.S. 1, 25 (2009) (Kennedy, J.). More recently, just two months ago, the Supreme Court noted that "voting discrimination still exists; no one doubts that." *Shelby County, Ala.*, 133 S. Ct. at 2619.  Indeed, recent examples of intentional racial discrimination in voting persist in Texas. *See Texas v. United States*, 887 F. Supp. 2d 133, 161 (D.D.C. 2012).

The test for determining the sufficiency of intervenors' interest is a non-stringent, "practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process." *Ross v. Marshall*, 426 F.3d 745, 757 (5th Cir. 2005) (internal citations and quotation marks omitted); *see also S. Utah Wilderness v. Norton*, No. Civ. A. 01-2518(CKK), 2002 WL 32617198, *1, *5 (D.D.C. June 28, 2002) (applying a "liberal approach" to Fed. R. Civ. P 24(a) analysis). Courts have held that, in cases involving challenges to the application of a particular statutory scheme, "the interests of those who are governed by those schemes are sufficient to support intervention." *Chiles v. Thornburg,* 865 F.2d

1197, 1214 (11th Cir. 1989) (quoting 7C Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1908.1, at 285 (2d ed. 1986)).

SB 14 fundamentally threatens Proposed Individual Plaintiff-Intervenor Ms. Clark's ability to exercise her right to vote in person in Texas. While she possesses other forms of photo identification, like her Prairie View-issued student photo ID, which she has used to vote in person in Texas as recently as November 2012, Ms. Clark does not possess any of the types of photo ID required by SB 14. But for the unnecessarily burdensome requirements of SB 14, Ms. Clark would be able to vote in person in upcoming Texas elections using her student ID.

Texas's implementation of SB 14 also directly and substantially affects Proposed Organizational Plaintiff-Intervenor. Specifically, the Texas League will be required to allocate significant resources to helping its existing base of voters secure one of SB 14's accepted forms of photo ID. As a result, Texas's continued implementation of SB 14 also will severely undermine the Texas League's capacity to fulfill its stated mission. Instead of directing its resources to, among other things, ultimately registering new young voters of color, it must, instead, devote substantial resources to ensuring that its existing young voters are able to cross the threshold of polling stations' doors on Election Day.

The substantial interests of Proposed Plaintiff-Intervenors counsel in favor of this Court's granting their Motion.

### 3.   Proposed Plaintiff-Intervenors' Interests Will Be Directly and Substantially Affected by the Disposition of this Litigation.

Proposed Plaintiff-Intervenors' interest in protecting their ability to vote is fundamental. Ms. Clark voted in person in Texas just last November using her student photo ID, after Section 5 of the VRA blocked Texas from implementing SB 14 because of its discriminatory effect. Now, because Texas has implemented SB 14, Ms. Clark's voting rights, and those of similar

qualified student voters of color, are imperiled. Proposed Organizational Plaintiff-Intervenor's interest in this litigation is similarly significant. Texas's continued implementation of SB 14 will require the Texas League to redirect its efforts and limited budget away from ultimately registering new voters and towards ensuring that already registered voters are able to cross the threshold of polling stations' doors. Consequently, the disposition of this litigation will have a substantial impact on Proposed Plaintiff-Intervenors' interests, and specifically on their access to voting in person in future elections in Texas.

### 4. Proposed Plaintiff-Intervenors' Interests Cannot Be Adequately Represented by the Existing Parties.

Proposed Plaintiff-Intervenors have the right to intervene in this litigation because they have significant protectable interests that will not be adequately represented by the existing parties. Fed. R. Civ. P. 24(a)(2). Proposed Plaintiff-Intervenors satisfy this minimal burden simply by showing that the representation of their interests by the present parties "*may* be inadequate." *Id.* (emphasis added); *Hopwood v. Texas*, 21 F.3d 603, 605 (5th Cir. 1994) (the adequacy requirement "is satisfied if the applicant shows that  representation of his interest may be inadequate") (internal citation and quotation omitted); *Doe*, 256 F.3d at 380 ("The potential intervenor need only show that the representation *may be* inadequate.") (internal citation and quotation omitted); *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972) (showing burden should be treated as minimal); *Gates v. Cook*, 234 F.3d 221, 230 (5th Cir. 2000) ("We note, . . ., that the burden of showing that the presumption of adequacy should be overcome is minimal . . . .") (citing *Edwards v. City of Hous.*, 78 F.3d 983, 1005 (5th Cir. 1996)); *United States v. Tex. Educ. Agency (Lubbock Indep. Sch. Dist.)*, 138 F.R.D. 503, 507 (N.D. Tex. 1991) ("[T]he presumption [of adequate representation] may be rebutted on a relatively minimal showing . . . .") (internal citation and quotation omitted); Wright et al., *supra*,

§ 1909 (an applicant ordinarily should be permitted to intervene as of right "unless it is *clear* that the party will provide adequate representation for the absentee" (emphasis added)).

Proposed Plaintiff-Intervenors satisfy that burden because Plaintiff does not have the same stake in the outcome of this matter as do Proposed Plainitff-Intervenors, who are among the intended beneficiaries of the Voting Rights Act, and whose right to vote in person would be imperiled by an adverse ruling on Plaintiff's claims.

Additionally, Plaintiff's initial analysis of the proposed photo ID law, as reflected in the denial of administrative preclearance, focused exclusively on the effects that SB 14 had on Latino registered voters. *See* Letter from Thomas E. Perez, Asst. Att'y Gen., U.S. Dep't of Justice, to Keith Ingram, Director of Elections, State of Texas (Mar. 12, 2012), attached as Exhibit 1 to Pls. Comp., Doc 1-1. (Texas "provided no data whether African-American or Asian registered voters are also disproportionately affected by S.B. 14"). Proposed Plaintiff-Intervenors seek to contribute to the instant litigation an additional and distinct focus: the law's effects on African-American registered voters, including student voters, in Texas.[2]

Moreover, it is not uncommon for federal agencies to revise a litigation strategy or theory of a case mid-course, or to abandon a prior institutional position altogether. For example, in an action challenging both the DOJ's denial of preclearance of a voting change in North Carolina

---

[2]     Even an overlap in interests or a general agreement in principles between Proposed Plaintiff-Intervenors and Plaintiff is insufficient to find that Proposed Plaintiff-Intervenors' interests will be adequately represented by Plaintiff. "[A] shared general agreement . . . does not necessarily ensure agreement in all particular respects." *Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 737 (D.C. Cir. 2003) (quoting *Natural Res. Def. Council v. Costle*, 561 F.2d 904, 912 (D.C. Cir. 1977)) (internal quotation marks omitted; alteration in original); *see also Trbovich*, 404 U.S. at 538-39 (permitting union member to intervene in a suit brought by the Secretary of Labor, even though the Secretary was broadly charged with protecting the public interest); *Nuesse v. Camp*, 385 F.2d 694, 702-04 (D.C. Cir. 1967) (although proposed intervenor and Comptroller of Currency had similar interests, their interests were not identical); *Wash. Mut., Inc. v. F.D.I.C.*, 659 F. Supp. 2d 152, 155 (D.D.C. 2009) (although government's and movant bank's positions were similar, permitting intervention because government did not adequately represent bank's interests); *Cnty. of San Miguel, Colo. v. MacDonald*, 244 F.R.D. 36 (D.D.C. 2007) (cattleman's association aligned in interest with Department of Interior permitted to intervene because association's interests were not adequately represented by government agency).

and the constitutionality of Section 5 of the VRA, the Government filed a motion to dismiss the case based on mootness, notwithstanding the dismissal's impact on the voting interests of intervening voters and organizations in the case. Att'y Gen.'s Mot. to Dismiss, *LaRoque v. Holder*, No. 11-5349, Doc. 1358274 (D.C. Cir. Feb. 14, 2012). Moreover, in a declaratory judgment action for preclearance of various voting changes in Florida, the Government and Defendant-Intervenors took different positions on whether a proposed change regarding constitutional initiatives should be precleared. Joint Status Report, *Florida v. Holder*, No. 1:11-cv-01428, Doc. 76, at 14, 17 (D.D.C. Mar. 2, 2012). Similarly, in a declaratory judgment action for preclearance of a voting change in Georgia, the Government reversed its position, from denying administrative preclearance of the proposed change to preclearing a similar statute without public comment during the course of preclearance litigation. Notice By Defendant-Intervenors, *Georgia v. Holder*, No. 1:10-cv-01062, Doc. 47 (D.D.C. Aug. 21, 2010). Given the possibility that Plaintiff here may ultimately take a contrary position to that of Proposed Plaintiff-Intervenors, and given that Proposed Plaintiff-Intervenors will add the distinct focus of SB 14's effects on African-American registered student voters in Texas, Proposed Plaintiff-Intervenors are unable to rely exclusively on the Plaintiff to defend their cognizable interests.[3]

Furthermore, the United States and private voters of color have frequently diverged on the appropriate strategies for ensuring the protection of voting rights. In *Northwest Austin*

---

[3]       *See also United States v. N.Y. City Bd. of Educ.*, No. 1:96-cv-00374, Doc. 592, at 5, 31 (E.D.N.Y. Sept. 12, 2006) (after bringing action challenging "three entry-level examinations that Board had administered, and the recruiting practices that Board had used to publicize those exams, [as] violat[ing] Title VII," United States entered into settlement "that awarded employment benefits to a group of 59 individuals (the 'beneficiaries') composed of [B]lack, Hispanic and Asian men and women, and non-minority females"; however, "[i]n April, 2002 . . . the United States decided that it would no longer defend the lawfulness of the Agreement's remedies for those beneficiaries who had not taken any of the challenged exams"); *Grutter v. Bollinger*, 539 U.S. 306 (2003) (despite role in prohibiting discrimination of the basis of race, color, or national origin, United States reversed course and took position opposing affirmative action program).

*Municipal Utility District Number One  v. Holder*, 557 U.S. 193 (2009), Defendant-Intervenors emphasized different aspects of the congressional record—in a brief the Supreme Court ultimately referenced at oral argument—and presented arguments and evidence that supplemented those provided by the Attorney General in its defense of Section 5 of the VRA. Transcript of Oral Argument at 55, 57, *Nw. Austin Mun. Util. Dist. No. One v. Holder* (No. 08-322) (2009); *see City of Lockhart v. United States*, 460 U.S. 125, 130 (1983) (minority intervenors presenting the sole argument in the Supreme Court on behalf of the appellees, while the United States stood in support of the appellants); *Blanding v. DuBose*, 454 U.S. 393, 398 (1982) (minority plaintiffs, but not the United States, appealing and prevailing in a voting rights suit); *Cnty. Council of Sumter Cnty., S.C. v. United States*, 555 F. Supp. 694, 696 (D.D.C. 1983) (United States and African-American intervenors adopting conflicting positions regarding the application of Section 2 in the Section 5 preclearance process). For that reason, there is a substantial likelihood that Proposed Plaintiff-Intervenors' interests in litigating this case will not adequately be represented by Plaintiff.

Additionally, Proposed Plaintiff-Intervenors bring to the litigation a "[l]ocal perspective on the current and historical facts at issue," which is not likely to be presented by the current Plaintiff, and which would assist this Court in understanding the precise discriminatory impact of SB 14. *Cnty. Council of Sumter Cnty*, 555 F. Supp. at 697; *see also Sandusky Cnty. Democratic Party v. Blackwell*, 387 F.3d 565 (6th Cir. 2004) (granting individual voters' motion to intervene in HAVA suit); *Commack Self-Service Kosher Meats, Inc. v. Rubin,* 170 F.R.D. 93 (E.D.N.Y. 1996) (intervention came early in an action where intervenors brought a different perspective that might assist court); *Fiandaca v. Cunningham*, 827 F.2d 825, 835 (1st Cir. 1987) (likelihood that applicants would introduce additional evidence favors intervention). The unique experiences

16

and perspectives of Proposed Plaintiff-Intervenors—and, in particular, of Ms. Clark—on the real-life effects of the photo ID law in Texas are invaluable to this Court's assessment and analysis of Plaintiff's claims concerning the discriminatory purpose and effect of SB 14 and, thus, strongly counsel in favor of this Court's granting their Motion to Intervene.

Likewise, counsel for Proposed Plaintiff-Intervenors have substantial experience in Voting Rights Act litigation and will adequately represent Proposed-Intervenors' interests. *See, e.g.*, *Shelby County, Ala.*, 133 S. Ct. at 2612 (constitutional challenge to the 2006 reauthorization of Section 5 of the VRA); *Nw. Austin Mun. Util. Dist. No. One*, 557 U.S. at 193 (mixed claim for bailout and constitutional challenge to the 2006 reauthorization of Section 5 of VRA); *Texas*, 888 F. Supp. 2d at 113 (preclearance challenge for SB 14 under Section 5 of VRA); *South Carolina*, 898 F. Supp. 2d at 30 (preclearance challenge for photo ID law under Section 5 of VRA); *Florida*, No. 1:11-cv-01428, Doc. 76 (preclearance challenge to, *inter alia*, early voting period and third-party voter registration drive restrictions under Section 5 of the VRA).

**5. Proposed Plaintiff-Intervenors Do Not Need to Satisfy the Requirements of Article III Standing.**

Under Fifth Circuit precedent, "Article III does not require each and every party in a case to have . . . standing." *Ruiz*, 161 F.3d at 832. When "the ultimate relief sought by the intervenors is also being sought by at least one subsisting party with standing to do so," *id.* at 830, there is no requirement for parties to independently possess standing. *See Newby v. Enron Corp.*, 443 F.3d 416, 422 (5th Cir. 2006); *Bituminous Cas. Corp. v. Garcia*, 223 F.R.D. 308, 311 (N.D. Tex. 2004).

Proposed Plaintiff-Intervenors assert similar claims and seek similar relief to those of Plaintiff. *Compare* Compl. in Intervention, filed with this Motion, *with* Compl., Doc. 1.

Therefore, there is no requirement that Proposed Plaintiff-Intervenors have Article III standing. *Ruiz*, 161 F.3d at 832.

But even if the relief sought by Proposed Plaintiff-Intervenors were construed as distinct from the relief sought by Plaintiff, Proposed Plaintiff-Intervenors satisfy the requirements of Article III standing.

As set forth above, Proposed Plaintiff-Intervenors have concrete and cognizable interests in this litigation that satisfy Article III's demands. *See e.g.*, *League of United Latin Am. Citizens, Dist. 19 v. City of Boerne*, 659 F.3d 421, 430–31 (5th Cir. 2011) (reversing district court's dismissal of intervenor for lack of standing because consent decree in existing litigation would cause injury in fact by diluting ability to vote and could be redressed by a favorable decision); *League of United Latin Am. Citizens, Council No. 4434 v. Clements*, 999 F.2d 831 (5th Cir. 1993) (*en banc*) (judges had standing to intervene in a case brought under Section 2 of the VRA where a proposed settlement would cause them injury as voters if not as elected officials).

Moreover, Proposed Plaintiff-Intervenors are "aggrieved parties" because the implementation of SB 14 significantly imperils their voting rights and, in the case of the Texas League of Young Voters, those of their members and constituents. *See Babbit v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979) (imminent harm satisfies the injury-in-fact requirement in suits regarding prospective injury). A favorable ruling from this Court would remedy this injury.

For these reasons, Proposed Plaintiff-Intervenors are entitled to intervention as of right.

## II. IN THE ALTERNATIVE, THE COURT SHOULD GRANT PERMISSIVE INTERVENTION.

Although Proposed Plaintiff-Intervenors respectfully assert their ability to intervene as of right, Fed. R. Civ. P. 24(b) provides an alternative basis for intervention. Under Fed. R. Civ. P. 24(b), permissive intervention may be granted "when an applicant's claim or defense and the main action have a question of law or fact in common." Fed. R. Civ. P. 24(b)(2). In addition, when assessing a motion for permissive intervention, the court should consider whether the intervention will unduly delay or prejudice existing parties. *See Reid v. Gen. Motors Corp.*, 240 F.R.D. 257, 260 (E.D. Tex. 2006); *see also In re Enron Corp. Sec, Derivative, & ERISA Litig.*, 229 F.R.D. 126, 130 (S.D. Tex. 2005) (permissive intervention was granted where plaintiffs' claims have both questions of law and fact in common with the main action and the court concluded that the intervention would not unduly delay the adjudication of the rights of the original parties); *Rivera v. City of San Antonio*, Civ. A. No. SA-06-CA-235-XR, 2006 WL 3691015, at *1, *5 (W.D. Tex. Dec. 12, 2006). Courts do not interpret this provision strictly, *see id.*, and the decision to allow permissive intervention is within the discretion of the court. *Newby*, 443 F.3d at 424 (upholding a grant of permissive intervention based on the district court's discretion).

Here, Proposed Plaintiff-Intervenors have met the requirements for permissive intervention. Proposed Plaintiff-Intervenors' claims have questions of fact and law in common with those already before this Court. Plaintiff "file[d] this action pursuant to Sections 2 and 12d of the Voting Rights Act, to enforce the voting rights guaranteed by the Fourteenth and Fifteenth Amendments to the United States Constitution." Doc. 1, Compl. ¶ 1 (citation omitted). Similarly, Proposed Plaintiff-Intervenors seek intervention to assert their claim that SB 14 violates their

rights guaranteed by Fourteenth and Fifteenth Amendments to the Constitution, pursuant to 42 U.S.C. § 1983, and by Section 2 of the Voting Rights Act. Compl. in Intervention ¶ 1.

As noted above, intervention in this case will not unduly delay the litigation in any respect. Proposed Plaintiff-Intervenors' intervention request is filed timely and Proposed Plaintiff-Intervenors agree to participate on the same schedule established for the existing parties.

As required by the local rules of this Court, Counsel for Proposed Plaintiff-Intervenors contacted counsel for existing parties to inform them of the filing of this intervention. Counsel for Plaintiff has advised that they do not oppose permissive intervention by Proposed Plaintiff-Intervenors. Counsel for Defendants have advised that they will oppose intervention.

These considerations conclusively demonstrate the propriety of the Proposed Plaintiff-Intervenors' permissive intervention request. In the event that the Court declines to grant intervention as of right, the Court should grant the Proposed Plaintiff-Intervenors' request for permissive intervention.

**CONCLUSION**

For the reasons set forth above, Proposed Plaintiff-Intervenors respectfully request that this Court grant their Motion to Intervene.

Dated: August 26, 2013

Respectfully submitted,

/s/ Christina Swarns

Sherrilyn Ifill
 *Director-Counsel*
Christina Swarns*
Ryan P. Haygood*
 *Attorney-in-Charge*
Natasha M. Korgaonkar*

20

Leah C. Aden*
NAACP Legal Defense and
 Educational Fund, Inc.
40 Rector Street, 5th Floor
New York, NY 10006
Tel: (212) 965-2200
Fax: (212) 226-7592

Danielle Conley*
Jonathan Paikin*
Kelly P. Dunbar*
Sonya L. Lebsack*
Wilmer Cutler Pickering
Hale and Dorr LLP
1875 Pennsylvania Ave., NW
Washington, DC 20006
Tel: (202) 663-6000
Fax: (202) 663-6363

*Attorneys for Proposed*
*Plaintiff-Intervenors*

* Applications for admission
*pro hac vice* submitted